**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geread Lee Forman, | No. CV–18–03202–PHX–DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Geread Forman's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 11, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply Brief (Doc. 15, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 10, "R.") and now reverses the Administrative Law Judge's decision (R. at 14–36) as upheld by the Appeals Council (R. at 1–6).

## I.    BACKGROUND

Plaintiff filed an application for Supplemental Security Income Benefits on April 8, 2014 for a period of disability beginning on March 26, 2014. (R. at 17.) Plaintiff previously filed an application for Supplemental Security Income Benefits that was denied by an

Administrative Law Judge ("ALJ") on May 22, 2010. (R. at 85–102.) Plaintiff's present claim was initially denied on August 13, 2014 and was denied again upon reconsideration on September 25, 2015. (R. at 17.) On May 2, 2016, Plaintiff appeared and testified before the ALJ for a hearing on his claim. (R. at 17.) The ALJ denied his claim on May 30, 2018. (R. at 14–36.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 1–6.) On October 5, 2018, Plaintiff filed this action seeking judicial review of the denial. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: spine disorders, disorders of the muscle, post–traumatic stress disorder, bipolar affective disorder, personality disorder, and polysubstance dependence. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 28.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 20.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light work," except that Plaintiff "could occasionally climb stairs/ramps, balance, stoop, kneel[,] crouch and crawl. He is unable to climb ladders, ropes, or scaffolds. In addition, he needs to avoid frequent contact with [the] public, co–workers and supervisors and is limited to simple unskilled work." (R. at 21.) Consequently, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 27.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability

– 2 –

determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn*, 495 F.3d at 630. Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises a pair of arguments which challenge the ALJ's consideration of medical opinions offered by Plaintiff's medical providers. (Pl. Br. at 5.) First, Plaintiff argues that the ALJ erred by giving minimal weight to the opinion of Dr. Dan Muschevici, Plaintiff's treating psychiatrist. (R. at 9.) Second, Plaintiff argues that the ALJ erred by giving minimal weight to the opinion of Hazel Mahatha, Plaintiff's board–certified psychiatric nurse practitioner. (R. at 6.) The Court agrees with Plaintiff. The ALJ erred in rejecting the opinions of Dr. Muschevici and Ms. Mahatha. Consequently, substantial evidence does not support the ALJ's non–disability determination and it must be reversed.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632.

If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). A treating physician's opinion will often be entitled to significant deference, even when contradicted. *Orn*, 495 F.3d at 632–33. An ALJ may not reject a treating doctor's opinion with boilerplate assertions or illusory contradictions between doctors based on isolated reports rather than the record as a whole.

*Garrison v. Colvin*, 759 F.3d 995, 1012–14 (9th Cir. 2014).

Treating nurse–practitioners are not afforded the same weight as treating physicians under the regulations. 20 C.F.R. § 404.1513(d) (2014). Instead nurse–practitioners are classified as an "other medical source." *Id*. To reject a treating nurse–practitioner's opinion the ALJ must provide germane reasons that are substantiated by the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### A. The ALJ erred by rejecting the opinion of Dr. Muschevici, Plaintiff's treating physician.

In July 2014, Dr. Muschevici completed an assessment of Plaintiff where he opined that Plaintiff "is unable to obtain and retain work in a competitive work environment, 8 hours per day, 5 days per week." (R. at 1749.) Dr. Muschevici based his opinion on Plaintiff's treatment history, medical file, and office notes. (R. at 1749.) He opined that "[Plaintiff] is unstable emotionally, has increased anxiety and depression, has psychotic symptoms and suicide [sic] thought. He has decreased attention, concentration, insight and judgment." (R. at 1749.) He also opined that Plaintiff would, on average, miss more than six days of work per month due to Plaintiff's mental impairments. (R. at 1748.)

The ALJ gave Dr. Muschevici's opinion minimal weight for two primary reasons. (R. at 24.) First, the ALJ found Dr. Muschevici's opinion was inconsistent with Plaintiff's Global Assessment of Functioning ("GAF") scores which indicated mild symptoms. (R. at 25.) Second, the ALJ found that Dr. Muschevici's opinion was inconsistent with psychiatric examination records that revealed normal findings and that Plaintiff generally responded well to treatment. (R. at 25.) The first reason is not specific and legitimate. The second is not supported by substantial evidence. *Murray*, 722 F.2d at 502.

### 1. The ALJ erred by rejecting Dr. Muschevici's opinion because of its purported inconsistency with Plaintiff's GAF scores.

The purported inconsistency between Dr. Muschevici's opinion and GAF scores elsewhere in Plaintiff's medical records is not a specific and legitimate reason for the ALJ to reject Dr. Muschevici's opinion. This is because the ALJ treated Plaintiff's GAF scores

inconsistently throughout his analysis. The ALJ treated GAF scores as authoritative when they undermined Plaintiff's disability claim, but as unauthoritative when they supported Plaintiff's claim. (R. at 25.) The ALJ found that GAF scores of 70 scattered throughout Plaintiff's records sufficiently undermined Dr. Muschevici's treating physician opinion. (R. at 25.) However, when evaluating whether GAF scores supported Plaintiff's claim, the ALJ changed course. He decided that GAF scores "are given little weight due to their subjective nature," and that they "are a snapshot of the claimant's functioning at the time and do not necessarily provide a longitudinal perspective of the claimant's functioning over a broad period of time." (R. at 25.) If Plaintiff's GAF scores that support his claim are not representative of his longitudinal functioning, then neither are his scores that undermine his claim. Because of this inconsistency, the ALJ's reason is insufficient to reject Dr. Muschevici's opinion.

### 2. The ALJ erred by rejecting Dr. Muschevici's opinion because of its purported inconsistency with the record.

The second reason given by the ALJ is also insufficient to reject Dr. Muschevici's opinion because, although it is specific and legitimate, it is not supported by substantial evidence. Isolated instances of partial or temporary improvement do not undermine a treating physician's opinion that is consistent with the entire record. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Instead, the record, when read as a comprehensive whole, butresses Dr. Muschevici's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012–14 (9th Cir. 2014) (emphasizing that the ALJ must consider the record as a whole rather than manufacture conflict by identifying isolated notes of improvement). Furthermore, some of the medical records the ALJ cites as undermining Dr. Muschevici's opinion actually support it.

Throughout his decision the ALJ found that Plaintiff's psychiatric exams generally revealed normal findings and that Plaintiff was generally improving with mental health treatment. (R. at 23–25.) The ALJ found that Dr. Muschevici's opinion was inconsistent with such findings. (R. at 25.) The ALJ supported his reasoning with various medical

records. According to the ALJ, these records demonstrate that Plaintiff had generally normal psychiatric findings, aside from auditory hallucinations, between April 2014 and November 2017. (R. at 23.) The ALJ also cited to specific statements in the medical records indicating that Plaintiff was feeling "fine," "good," "happy," and "better." (R. at 23.)

Contrary to the ALJ's findings, Plaintiff's psychiatric medical records between November 2013 and April 2018 predominantly reflect severe impairments consistent with Dr. Muschevici's opinion. (R. at 485, 543, 731, 735, 749, 767, 891, 900, 935, 976, 995, 1012, 1027, 1036, 1064, 1116, 1200, 1257, 1270, 1282, 1390, 1449, 1476, 1484, 1488, 1499, 1503, 1655, 1657, 1800, 1805, 1822.) Where the ALJ noted Plaintiff's improvement, the record contains noteworthy examples where Plaintiff's symptoms are especially severe or persist shortly after examinations.

For example, on February 3, 2015, Plaintiff reported feeling completely overwhelmed and hearing voices. (R. at 731.) This was less than two weeks after a visit where Plaintiff stated his mood had been "pretty good." (R. at 749.) The ALJ cited the record of improvement as evidence that contradicted Dr. Muschevici's opinion. (R. at 23.) But even that record, when read thoroughly, does not contradict Dr. Mushcevici's opinion, since Plaintiff also reported finding it difficult to ignore his auditory hallucinations. (R. at 749.)

The ALJ also cherrypicked facts in individual medical records that possibly undermined Plaintiff's claim but overlooked helpful facts contained in the same record. In one record the ALJ cited, Plaintiff stated he "feels really great," but that record also noted that he became "angry and aggressive" during the appointment. (R. at 891.) Another record cited by the ALJ noted that Plaintiff was not well–groomed. (R. at 903.) The ALJ considered grooming and appearance indicative of Plaintiff's wellbeing in a January 2018 report but did not consider the contrary when citing a record as supporting Plaintiff's improvement. (R. at 25, 25, 903, 1854.)

A final example of the ALJ's selective reading of the record is particularly stark. The ALJ cites to February 2015 and April 2015 records to support the notion that Plaintiff

was generally doing well. (R. at 23.) However, the ALJ downplayed Plaintiff's hospitalization from March 11, 2015 to March 16, 2015, accurately noting that it was due to a drug overdose but failing to mention the reason for Plaintiff's drug overdose. (R. at 24.) Plaintiff attempted suicide. (R. at 1390.)

This type of selective reading and characterization of the medical records by the ALJ was error. The ALJ was required, but failed, to read the medical records in their entirety and in their proper context. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014) (stating that a treating physician's opinion may be rejected if contradicted by substantial evidence in the record, but scattered instances of partial or temporary improvement do not constitute such substantial evidence).

The ALJ offered only scattered instances to reject Dr. Muschevici's opinion. The ALJ provided several snippets of partial or temporary improvement in Plaintiff's symptoms, but these instances are not a proper characterization of the entire record. *See Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Instead, the longitudinal record shows that Plaintiff's impairments are legitimate, sustained, and consistent with Dr. Muschevici's opinion. Consequently, the ALJ erred.

### B. The ALJ erred by rejecting the opinion of Hazel Mahatha, Plaintiff's treating board–certified psychiatric nurse practitioner.

Hazel Mahatha ("Mahatha") opined that Plaintiff would be off task for thirty percent or more of an eight–hour, five–day per week job due to his mental impairments. (R. at 1016.) She also opined that Plaintiff would on average miss five or more days of work per month. Furthermore, she noted that Plaintiff has severe post–traumatic stress disorder which results in instances of rage and physical aggression, including one instance where Plaintiff punched another patient in the face. (R. at 1019.)

The ALJ rejected Mahatha's opinion for the same reasons he rejected Dr. Muschevici's opinion. First, he rejected Mahatha's opinion because he found it was

inconsistent with treatment notes from Lifewell Behavioral Wellness where Mahatha worked. (R. at 24.) Second, he rejected the opinion because he found it was inconsistent with Plaintiff's GAF scores. (R. at 24.)

Since Mahatha's opinion is considered an "other medical source," the ALJ only needs a germane reason to reject her opinion. 20 C.F.R. § 404.1513(d) (2014); *Molina*, 674 F.3d at 1111. Still, to be valid, the germane reason must be substantiated by the record. *Molina*, 674 F.3d at 1111. As discussed in section A.1., *supra*, the ALJ's own treatment of Plaintiff's GAF scores invalidates his use of GAF scores as a basis for rejecting Mahatha's opinion.

Similarly, the ALJ also erred by rejecting Mahatha's opinion because of its purported inconsistency with the record. (R. at 24.) Though the ALJ's reason is germane, it is not substantiated by the record. *Molina*, 674 F.3d at 1111–12. Instead, as discussed in section A.2., *supra*, the record substantially supports Mahatha's opinion regarding Plaintiff's severe impairments. Though the ALJ cites several records that indicate partial or temporary improvement in Plaintiff's symptoms, they do not substantiate the ALJ's finding that Mahatha's opinion is inconsistent with the entire record. (R. at 23); *see Ghanim*, 763 F.3d at 1164 (stating that occasional signs of improvement do not undermine consistent impairments in the overall record).

For example, the ALJ cites a February 1, 2018 annual treatment review where Plaintiff stated he thinks he is doing better because he is at a better clinic. (R. at 24.) The ALJ states that this contradicts Mahatha's opinion because it notes improvement and is from the same month as Mahatha's opinion. But this isolated statement of improvement does not tell the whole story and it is the whole story that the ALJ must consider. *Ghanim*, 763 F.3d at 1161–62. Instead, the longitudinal record demonstrates sustained and severe impairments interrupted by only partial or temporary improvement. During an examination on the same day as the annual treatment review, Plaintiff appeared angry, causing Mahatha to conclude that Plaintiff "is not appropriate for any environment that requires interaction with others." (R. at 1082.) One–week later Plaintiff was very tearful and anxious during an

appointment. (R. at 1076.) One–month later he was the same. (R. at 1068.)

Ultimately, the record does not substantiate any contradiction with Mahatha's opinion and actually supports Mahatha's opinion despite isolated records of partial or temporary improvement. Consequently, the ALJ erred in rejecting her opinion because the ALJ did not offer a germane reason substantiated by the record.

### C. The credit–as–true rule does not apply.

The credit–as–true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three–part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The rule does not apply here because the record has not been fully developed. Remand for further proceedings is required where the record leaves serious doubt as to whether the claimant is disabled. *Garrison*, 759 F.3d at 1021. The record does not contain sufficient evidence to determine whether someone with Plaintiff's impairments is disabled. The ALJ calculated Plaintiff's RFC based on vocational expert testimony from Plaintiff's prior Social Security claim. (R. at 28.) However, that vocational expert did not evaluate Plaintiff's occupational prospects with regard to the impairments identified by Dr. Muschevici and Hazel Mahatha. Furthermore, Plaintiff's brief does not indicate why there is sufficient evidence in the record to justify a remand for entry of benefits. (See Pl. Br. at 11.) Consequently, the ordinary remand rule applies. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

**IT IS THEREFORE ORDERED** reversing the May 30, 2018 decision of the Administrative Law Judge, (R. at 14–36), as upheld by the Appeals Council on August 23, 2018 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security

Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of October, 2019.

Honorable Diane J. Humetewa
United States District Judge